NO. 07-04-0419-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 3, 2006

_____

STEVEN L. BORGERS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-405065; HON. CECIL G. PURYEAR, PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

In this appeal, appellant Steven L. Borgers challenges his conviction of aggravated robbery and the ensuing jury-assessed punishment of 60 years confinement in the Institutional Division of the Department of Criminal Justice and, in addition, a fine of $10,000. In presenting his appeal, in one point, he contends the evidence is factually

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005).

insufficient to support the jury's verdict. Disagreeing with that contention, we affirm the judgment of the trial court.

The nature of appellant's challenge makes it necessary for us to recount pertinent testimony. On February 2, 2004, the Denny's restaurant located on Avenue Q in Lubbock was robbed at about 5:00 p.m. The manager of the restaurant, Danielle Walters, testified that she was in a small room used by her as a place for changing receipts and counting money. As she was about to lock the door to the room, she was surprised by a black male who had a pantyhose over his head and was dressed in dark clothes with a blue jacket. She was seated in a rolling chair and, as the individual entered the room, he knocked her out of the chair and pushed a gun into the side of her head. The intruder told her she was being robbed, to get down, not say anything, not to look up at him and if she did look at him, he would shoot her. He took money off the desk and told Walters that he knew there was $800 in the safe and she should give him that money.

Walters averred that the robber's voice stood out for her and that "the characteristics of the voice was [sic] the exact same as an employee that I had talked to just recently." She also averred that as she listened to the voice, "[t]here's only one name clicking through my head, and it was the name of the employee." She identified that employee as appellant. She also said that the store had a videotape surveillance system that "monitors pretty much our office door" in addition to other portions of the business. The man told her, "I want the videotape," and she gave it to him. She was then pushed under the desk, and the man attempted his get-away. He was unable to leave through the back door, so he had to leave through the restaurant.

Rick Rose, another Denny's employee, was eating as a customer at the restaurant at the time of the robbery. While he was in the restroom at Denny's, he saw appellant. Although it took him a minute to recognize him, he knew appellant because he had trained on the morning shift that appellant had worked. Rose asked appellant what he was doing, to which appellant replied that he was just there to use the bathroom. Rose noticed that appellant had on a blue jacket and appeared to have a black bag clutched to his chest. Shortly afterwards, Rose saw appellant leave the restaurant, he opined, "a little faster than normal."

Next, Rose saw Walters come from the back of the building. She was excited and told him that she had been robbed and, she said, "I know the voice." They locked the doors to the restaurant and notified the police. Rose then looked into each of the rooms of the restaurant and discovered rolls of coins on the floor of the restroom. He averred he had not seen any African-Americans in the restaurant other then appellant. He was shown a photo-lineup at the police station and identified appellant as the individual he had seen in the restroom and at the restaurant.

Appellant's witness Angela Terrell testified that appellant was staying with her at her apartment. She said that appellant had come by her workplace to pick her up about 4:30 p.m. on the day of the robbery but left because she had to work until 5:30 p.m. He was not there to pick her up at 5:30 p.m. but was at her apartment about 5:45 when she returned after getting a ride from a co-worker. Her apartment was searched by the police, but nothing incriminating was found. Tasha Terrill, appellant's niece, furnished alibi testimony by averring that appellant was at Angela Terrell's apartment and left a little after 4:00 p.m.

3

She said that appellant returned a little after 4:00 p.m. and left the apartment a little after 5:00 p.m.

It has long been the rule that a criminal appellant may challenge the sufficiency of the State's evidence even though the issue was not raised in the trial court. *Givens v. State*, 26 S.W.3d 739, 740-741 (Tex. App.–Austin 2000, pet. ref'd). In a factual sufficiency review, all of the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Id.* at 741-42. A factual sufficiency review asks whether a neutral review of the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's verdict. *See Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In performing that function, we must remember that we are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. See *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

The gist of appellant's challenge is Walters' identification of appellant as the culprit simply by her familiarity with his voice. However, her trial testimony was clear, definite, and unimpeached on cross-examination that she was able to recognize appellant's voice because she had heard it before during the course of appellant's employment at the restaurant. Her outcry and identification were immediate. The Court of Criminal Appeals has held that voice identification testimony is admissible and it is within the jury's province to determine the weight to be given the testimony. *See McInturf v. State*, 544 S.W.2d 417, 418-19 (Tex. Crim. App. 1976). There is also testimony that appellant was at the scene

of the crime at the time it was committed by a person who was familiar with him. Although it is true that there was alibi testimony, the evidence adduced was amply sufficient to be within the jury's exclusive province to resolve any factual differences and to determine the credibility of the testimony.

In summary, we hold the evidence was legally and factually sufficient to sustain the jury verdict. Accordingly, appellant's point of alleged error must be, and is hereby, overruled. The judgment of the trial court is affirmed.


John T. Boyd
Senior Justice

Do not publish.